WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF DALY CITY, a general law city,<br><br>Defendant. | Case No. 3:21-cv-01773<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this action against Defendant City of Daly City ("Defendant" or "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

## INTRODUCTION

1.     At the onset of the COVID-19 pandemic, the State of California and various counties, cities, and other regulatory bodies throughout the state issued a series of emergency orders and regulations in an effort to stem the spread of the virus and protect the public health and welfare. These early efforts—aimed at balancing the public's basic economic and social needs with a desire to minimize COVID morbidity and mortality—came at a steep price, especially for essential businesses, and the millions of employees and members of the public who rely on them.

2.     California grocers have stayed open to serve their communities since day one. They understand that defeating this pandemic requires extraordinary measures and have eagerly committed themselves to the task. Since March of 2020, California grocers of all sizes have established rigorous and science-driven safety measures, often at great expense, to adapt to this new environment and ensure that they operate in a safe and hygienic manner in order to help slow the spread of the virus, and protect their workers and the public.

3.     Grocers have implemented comprehensive safety measures for customers and employees and compensated frontline grocery employees for their extra efforts in a difficult environment. Grocers have provided "appreciation pay," "hero bonuses," and "thank you pay" to reward their associates.  Additionally, in terms of employee support, grocers have offered COVID-19 testing to employees and provided emergency leave and paid time off to those affected by the virus or experiencing symptoms.

4.     For worker safety, grocers have provided supplies to employees including face masks and protective gear in addition to encouraging employees to stay home if feeling ill and implementing paid leave policies. Plexiglas shields, physical distancing measures, and contactless payment and delivery services have been implemented to protect employees.  Some of California's largest grocers such

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  as Kroger and Albertsons joined the United Food and Commercial Workers

2  International Union just last year to urge federal and state governments to designate

3  grocery store employees as emergency first responders.

4       5.    Yet on March 8, 2021, the City passed the "Hazard Pay for Grocery

5  Workers Ordinance" ("Ordinance") which requires employers, starting ten (10)

6  days after the adoption of the Ordinance, to pay a $5 per hour premium on whatever

7  the employee's existing wage is at the time of enactment, regardless of any existing

8  bonus or incentive program that the employer may have in place.

9       6.    The Ordinance unreasonably singles out specific grocers, while

10  ignoring employers or essential frontline workers outside the grocery industry.

11  Plaintiff seeks a declaration that the law is invalid and unconstitutional as applied to

12  CGA's Members, and an injunction halting any action to enforce the Ordinance as

13  to CGA's Members on the grounds that it (1) is preempted by federal law

14  regulating collective bargaining and unfair labor practices; (2) violates the equal

15  protection and contracts clauses of the U.S. and California constitutions.

16                    **JURISDICTION AND VENUE**

17       7.    This Court has jurisdiction over the subject matter of this suit

18  pursuant to 28 U.S.C. §1331, as the Plaintiffs' claims arise under federal laws;

19  namely, the National Labor Relations Act, 29 U.S.C. §141 *et seq.*; Article VI of the

20  U.S. Constitution which designates the Constitution and Laws of the United States

21  as the supreme law of the land; and the equal protection clause and contracts clause

22  of the U.S. Constitution.

23       8.    This Court has supplemental jurisdiction over this subject matter

24  pursuant to 28 U.S.C. §1367(a), as the Plaintiffs' claims arising under the

25  California Constitution are so closely related to the federal question claims that they

26  form part of the same case or controversy under Article III of the U.S. Constitution.

27       9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as

28  this Court is sited in the federal judicial district where the events giving rise to the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4445166

1    CGA's claims have occurred, are now occurring, and will occur in the future if not
2    prevented through actions of this Court. CGA's members are situated in this district
3    and are and will continue to be adversely affected by the irreparable harms sought
4    to be remedied and prevented by this Court's action upon this Complaint.

5                                            **PARTIES**

6           10.    Plaintiff California Grocers Association has served as the voice of
7    the state's grocery community for over 120 years. As a nonprofit, statewide trade
8    association, CGA's membership is comprised of over 300 retailers and
9    approximately 150 grocery supply companies. As part of its mission, CGA has
10   advocated on behalf of its member retailers on important policy issues.
11   Headquartered in Sacramento, California, CGA brings this action on behalf of its
12   members operating stores in the City of Daly City.

13          11.    Defendant, City of Daly City, is and at all relevant times has been a
14   public entity duly organized and existing under and by virtue of the laws of the
15   State of California as a general law city.

16                               **FACTUAL BACKGROUND**

17          12.    California Grocers Association pursues this action on behalf of its
18   members who are grocery store employers ("Members") because the employers
19   who operate grocery stores in Daly City will suffer a direct and adverse impact
20   from the application of the Ordinance, and thus would have standing to pursue
21   these claims in their own right.  The policy and legal interest CGA seeks to protect
22   is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought
23   does not require the participation of individual members.

24          13.    Several Members operate grocery stores in the City that employ
25   members of a specific labor union, United Food and Commercial Workers
26   International, Local 5 ("UFCW 5"), and those employees are parties to collective
27   bargaining agreements that govern the terms of their employment, including wage
28   scales. Other Members operate grocery stores that do not employ unionized

workers, but those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14.     Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of Daly City. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any additional hero pay, bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15.     By design, the Ordinance picks winners and losers.  It singles out large grocery companies with unionized workforces (i.e., UFCW 5's members) without providing any reasonable justification for the exclusion of other employers or frontline retail workers. The Ordinance arbitrarily and improperly targets certain grocery store businesses in Daly City for disparate treatment while not requiring the same commitments from similarly situated businesses, or conferring *any* benefits on similarly situated employees.  There is no support for any of the City's statements that the Hazard Pay will protect public health, address economic insecurity, and promote job retention.

## **THE ORDINANCE**

16.     The Hazard Pay for Grocery Workers Ordinance codified in Chapter 5.106 in the Daly City Municipal Code is attached hereto as **Exhibit A**.  It applies only to grocery stores who employ 500 or more employees nationwide, regardless of where those employees are employed.  Section 5.C.  Grocery store is defined as "a retail or wholesale store that is at least 12,000 square feet in size that is located within the geographic limits of the City, and that sells primarily household food stuffs.  Section 5.J.

17.     Grocery stores meeting this minimum threshold of employees are

5
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

required to provide each employee with hazard pay consisting of an additional five dollars ($5.00) per hour for each hour worked.  Section 5.K.  The Ordinance requires hazard pay to be paid for 120 days from the effective date of the Ordinance.  Section 14.

18.     The Ordinance takes effect ten (10) days after its adoption, March 8, 2021, and prohibits reducing a grocery employee's compensation or limiting a grocery employee's earning capacity for exercising any rights protected under the Ordinance.  Section 8.

19.     Grocery stores are required to provide a notice of rights established by the Ordinance.  Section 9.

## **FIRST CAUSE OF ACTION**

### **Declaratory and Injunctive Relief**

### **(NLRA Preemption)**

20.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 19, inclusive.

21.     Enacted in 1935, the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 151, *et seq*., creates a uniform federal body of law governing union organizing, collective bargaining, and labor-management relations applicable to employers engaged in interstate commerce.  It established various rules concerning collective bargaining and defined a series of banned unfair labor practices, including bans on interference with the formation or organization of labor unions by employers. The NLRA does not apply to certain workers, including supervisors, managerial employees and confidential employees – all categories specifically excluded from the Ordinance.

22.     The NLRA prohibits state and local regulation of conduct that Congress intended to be left to be controlled by the free-play of economic forces. Legislation that interferes with the "balanced state of collective bargaining" is preempted by the NLRA.  *See Machinists v. Wisconsin Employment Relations*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4445166

1 | *Comm'n*, 427 U.S. 132 (1976).

2 |       23.    In particular, the NLRA preempts any and all state and local

3 | enactments that, by design or consequence, regulate or interfere with the then-

4 | existing balance of economic power between labor and management with respect to

5 | zones of activity that, under federal labor law, are intended to be left to the free play

6 | of economic forces. Laws subject to NLRA preemption include laws that interfere

7 | with or attempt to regulate the economic tools available to labor or management

8 | during the course of collective bargaining or that otherwise interfere with the

9 | collective bargaining process, such as those that alter the parties' rights and

10 | economic alternatives during collective bargaining, or the processes and procedures

11 | utilized for union organizing.

12 |       24.    Application of the Ordinance to the activities of the Daly City

13 | Members unequivocally intrudes upon zones of activity in the areas of labor

14 | relations, union organizing, and collective bargaining that is reserved under federal

15 | labor law and policy to the free play of economic forces.  The Ordinance establishes

16 | premium pay standards that, by design or consequence, empower the UFCW or

17 | other collective bargaining units to secure a wage rate they could not otherwise

18 | have obtained from the employer at a unionized or non-union grocery store. This

19 | undermines the collective bargaining process and disrupts the process of union

20 | organizing.

21 |       25.    While the City has the ability to enact ordinances to further the

22 | health and safety of its citizens, the Ordinance here bears no relation to those goals.

23 | Local minimum wage laws, for example, seek to lessen the burden on public

24 | welfare services. This ordinance is not a minimum labor standard.  It is a mandatory

25 | hourly bonus for a specific group of workers, regardless of the wage negotiated in

26 | the current collective bargaining agreements or other employment agreements.

27 |       26.    The Ordinance is preempted by the NLRA as it regulates zones of

28 | activity that Congress intentionally left to be controlled by the free play of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4445166

1    economic forces.

2        27.    The City's application and enforcement of the Ordinance will cause

3    CGA's Members to suffer irreparable harm for which they have no adequate

4    remedy at law, even if the Ordinance is later declared by this Court to be void and

5    unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and

6    §1988(b).

7        28.    CGA is entitled to judgment declaring the Ordinance to be void and

8    unenforceable under the Supremacy Clause of the U.S. Constitution and equitable

9    and injunctive relief to prevent Daly City or any other private enforcer from

10   attempting to enforce or give effect to the Ordinance.

11                    **<u>SECOND CAUSE OF ACTION</u>**

12                    **Declaratory and Injunctive Relief**

13       **(Equal Protection Clause of the United States Constitution)**

14       29.    CGA incorporates herein by this reference the allegations contained

15   in Paragraphs 1 through 28, inclusive.

16       30.    CGA hereby seeks declaratory, equitable and injunctive relief to

17   prevent the City from depriving Plaintiff's members of the protections afforded to

18   them under the Equal Protection Clause of the U.S. Constitution, which guarantee

19   each and all of them equal protection of the laws.  (U.S. Const., Amend. XIV, § 1).

20   This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

21       31.    The Equal Protection Clause requires that persons who are similarly

22   situated receive like treatment under the law, and that statutes may single out a class

23   for distinction only if that classification bears a rational relationship to the purpose

24   of the statute.  As such, the City may not irrationally single out one class of

25   individuals for discriminatory treatment.

26       32.    The Ordinance improperly singles out certain grocery store

27   businesses in Daly City for disparate treatment while not requiring the same

28   treatment of similarly situated businesses.  More importantly, the ordinance

implicates the Members' fundamental right to be free from unreasonable governmental interference with their contracts, specifically their collective bargaining agreements and other employment agreements.

33.     The stated purpose of the Ordinance, namely, to protect public health, address economic insecurity, and promote job retention during the COVID-19 emergency by requiring grocery stores to provide premium pay is not rationally related to the discriminatory treatment of CGA's Members.  No significant and legitimate public purpose exists for the Ordinance.  The City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW 5.

34.     By virtue of the foregoing, application of the Ordinance to the CGA's Members within the City violates the equal protection guarantees of the U.S. Constitution.

35.     The City's application and enforcement of the Ordinance will cause Plaintiff's members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable.

## <u>THIRD CAUSE OF ACTION</u>

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the California Constitution)

36.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 35, inclusive.

37.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's members of the protections afforded to them under the Equal Protection Clause of the California Constitution, which like the U.S. Constitution, guarantees each and all of them equal protection of the laws. (Cal. Const., Art. I § 7.)

38.     For the same reasons set forth in Paragraphs 29 through 35 above,

the Ordinance violates the Equal Protection Clause of the California.  Such application will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### For Declaratory and Injunctive Relief

### (Contracts Clause of the U.S. Constitution)

39.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 38, inclusive.

40.    CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's Members of the protections afforded to them under the Contracts Clause of the U.S. Constitution, which provides in pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1).  The Contract Clause imposes limits upon the power of a State, and Municipalities operating under the color of State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

41.    The Ordinance substantially interferes with Members' contracts, including its collective bargaining agreements with its employees, without any significant or legitimate public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention.  None of these justifications support this measure, because the City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

42.    Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any such public purpose.

43.    By virtue of the foregoing, application of the Ordinance to CGA's members constitutes a substantial and unconstitutional impairment of those members existing contractual relationships that will cause them to suffer irreparable harm for which they have no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Contracts Clause of the California Constitution)

44.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 43, inclusive.  Plaintiffs hereby seek declaratory and injunctive relief to prevent the City from violating, and continuing to violate, the Contract Clause of the California Constitution, which provides in pertinent part that: "A ... law impairing the obligation of contracts may not be passed." (Cal. Const., Art. I, § 9.)

45.    Like the Federal Contracts Clause, the California Contracts Clause also imposes limits upon the State of California, and its municipalities, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.  For the same reasons set forth in Paragraphs 41 through 43 above, application of the Ordinance to CGA's members within the City constitutes a substantial and unconstitutional impairment of those members existing contractual relationship in violation of the California Contract Clause. Such application will cause those members to suffer irreparable harm for which they have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    On the first cause of action, a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, is preempted by the National Labor Relations Act, and its implementing regulations and guidance, and are therefore void and unenforceable, and entering a preliminary

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4445166

1   and permanent injunction enjoining the City from enforcing or taking any action

2   under the Ordinance;

3       2.    On the second and third causes of action, enter a judgment declaring

4   that the Ordinance, as well as any act taken in furtherance of the Ordinance by any

5   person, violate state and federal equal protection guarantees, and are therefore void

6   and invalid, and entering a preliminary and permanent injunction enjoining the City

7   from enforcing or taking any action under the Ordinance;

8       3.    On the fourth and fifth causes of action, enter a judgment declaring

9   that the Ordinance, as well as any act taken in furtherance of the Ordinance by any

10   person, violate the contracts clauses of the state and federal constitution, and are

11   therefore void and invalid, and entering a preliminary and permanent injunction

12   enjoining the City from enforcing or taking any action under the Ordinance;

13       4.    For an award of attorneys' fees and costs of suit herein pursuant to

14   California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other

15   applicable law; and

16       5.    For such other and further relief as the Court may deem just and

17   proper.

18   Dated:    March 12, 2021    MORRISON & FOERSTER LLP

19

20

21

22   By:   /s/ William F. Tarantino

       William F. Tarantino

23       Attorneys for Plaintiff

24       CALIFORNIA GROCERS ASSOCIATION

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4445166

# Exhibit A

ORDINANCE NO._____

AN URGENCY ORDINANCE OF THE CITY COUNCIL OF THE CITY OF DALY CITY
ADDING CHAPTER 5.106 TO THE DALY CITY MUNICIPCAL CODE TO REQUIRE
GROCERY STORES IN CITY OF DALY CITY TO PAY EMPLOYEES HAZARD PAY
DURING THE NOVEL CORONAVIRUS (COVID-19) PANDEMIC

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF DALY CITY DOES
ORDAIN AS FOLLOWS:

WHEREAS, international, national, state, and local health and governmental authorities are
responding to an outbreak of respiratory disease caused by a novel coronavirus named "SARS-
CoV-2," and the disease it causes has been named "coronavirus disease 2019," abbreviated COVID-
19, ("COVID-19"); and

WHEREAS, on March 19, 2020, the California State Public Health Officer, designated
specific sectors and their workers, including grocery stores, as Essential Critical Infrastructure
Workers ("essential workers") to ensure the "continuity of functions critical to public health and
safety, as well as economic and national security;" and

WHEREAS, according to a November 2020 study by the *Brookings Institution, Windfall
Profits and Deadly Risks*, the United States' top retail grocery companies have earned record levels
of profits during the pandemic, and this increase in profit has not been reflected in higher earnings
for grocery workers, who have borne the hazardous work condition that underpin those record
profits; and

WHEREAS, the City of Day City recognizes that essential grocery store workers must be
justly compensated for the clear and present dangers of doing their jobs during the pandemic; and

WHEREAS, it is a well-established practice to afford grocery workers supplemental
compensation for performing hazardous duty or work involving physical hardship that can cause
extreme discomfort and distress; and

WHEREAS, grocery store workers are performing hazardous duty due to the significant risk
of exposure to COVID-19; they have been working under these hazardous conditions for months,
and they will continue to do so for the foreseeable future as the COVID-19 emergency presents an
ongoing threat for an uncertain period, with the potential for subsequent waves of infection; and

WHEREAS, essential grocery workers cannot choose to work from home--they must come
to work to do their jobs, which involve heightened risk of exposure and infection of COVID-19
through substantial interaction with customers on an ongoing basis and indoors where there is less
air circulation; and

WHEREAS, United Food and Commercial Workers ("UFCW") Locals in Northern
California, which represent grocery workers, report that over 700 grocery workers in their ranks
have tested positive with COVID-19, and members of their union have been hospitalized or have
died from the coronavirus; and

WHEREAS, there are numerous large grocery chains operating in Daly City that employ
workers in Daly City and have at least 500 employees nationwide, with workers who are facing the
hazards of COVID-19 in the workplace every day: and

WHEREAS, the continued availability of grocery stores to the public and the ability of their employees to continue working, notwithstanding hazardous conditions, is fundamental to the health and welfare of the community, and establishing hazard pay for grocery store workers protects public health and welfare by insuring the stability of the food supply chain, supports stable incomes and promotes job retention and retention of employees by stores, by ensuring that grocery and  workers are compensated for the substantial risks they are undertaking to provide essential services in a safe and uninterrupted manner during the COVID-19 emergency; and

WHEREAS, on January 17, 2021, the California Department of Public Health reported another COVID-19 variant that had grown more common across the state since December, with worrisome signs that this variant may be highly transmissible; and

WHEREAS, a growing list of cities and counties across California, including City of San Mateo, County of San Mateo, South San Francisco, City Daly City , Berkeley, Los Angeles, Long Beach, San Jose, and San Leandro began announcing and adopting legislation for hazard pay for grocery workers during the period where counties are in the Purple, Red, or Orange level of Community Transmission for COVID-19 under State Health orders; and

WHEREAS, the California Constitution, Article XI, Section 7, vests cities and counties with the authority to enact ordinances to protect the health, safety, and general welfare, of their citizens; and

WHEREAS, Labor Code section 1205 vests cities and counties with the authority to set labor standards regarding the payment of wages that are more stringent than state standards: and

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF DALY CITY ORDAINS AS FOLLOWS:

**SECTION 1.  Recitals.**   The City Council finds the foregoing recitals to be true and correct and hereby incorporates those recitals into this Ordinance.

**SECTION 2.  Emergency Need.** The City Council finds and declares that adoption of this Urgency Ordinance ("Ordinance") is necessary for preserving the public peace, health, and safety for the following reasons:

A. The COVID-19 pandemic has led to the current state of emergency in California.

B. Grocery stores are the primary points of distribution for food and other daily necessities for the residents of the City of Daly City and are therefore essential to the vitality of our community.

C. To protect the food supply chain and the public health and safety, the City of Daly City must take steps to guard against turnover and ensure that grocery stores in Daly City have well-trained, consistent,and stable staffing.

**SECTION 3.  Effective Dates.**  This Ordinance will expire one hundred twenty (120) days after the effective date of this Ordinance.

**SECTION 4.   Short title.**  This Ordinance shall constitute the "Hazard Pay for Grocery Workers Ordinance" and may be cited as such.

**SECTION 5.  Definitions.**  The definitions set forth in this Section shall govern the construction and meaning of the terms used in this Ordinance:

A.  "Base Wage" means the hourly wage paid to Covered Employees as of the effective date of this Ordinance less Hazard Pay owed under this Ordinance or any other premium hourly rate already paid to compensate Covered Employees for working during the pandemic (referred to herein as "Employer-Initiated Hazard Pay").

B.  "City" means the City of Daly City.

C.  "Covered Employer" means any Person who (a) directly or indirectly or through an agent or any other Person owns or operates a Grocery Store and employs or exercises control over the wages, hours or working conditions of any Covered Employee; and (b) employs 500 or more employees nationwide regardless of where those employees are employed, or is a Franchisee associated with a Franchisor or a network of Franchises with Franchisees that employ more than 500 employees in the aggregate, regardless of where those employees are employed.

D.  "Covered Employee" means any person who, in a calendar week, performs at least two (2) hours of work for a Covered Employer within the geographic boundaries of the City, is paid by the hour, and qualifies as an employee entitled to payment of a minimum wage from any Covered Employer under the California minimum wage law, as provided under Section 1197 of the California Labor Code and wage orders published by the California Industrial Welfare Commission.

E.  "Covered Employee" does not include managers, supervisors, or confidential employees.

F.  "Employer-Initiated Hazard Pay" means any other premium hourly rate already paid by a Covered Employer solely to compensate Covered Employees for working during the pandemic.

G.  "Franchise" means a written agreement by which:

   a.  A Person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by the grantor or its affiliates; and

   b.  The operation of the business is substantially associated with a trademark, service mark, tradename, advertising, or other commercial symbol; designating, owned by, or licensed by the grantor or its affiliate; and

   c.  The Person pays, agrees to pay, or is required to pay, directly or indirectly, a Franchise fee.

H.  "Franchisee" means a Person to whom a Franchise is offered or granted.

I.  "Franchisor" means a Person who grants a franchise to another Person.

J.  "Grocery Store" means a retail or wholesale store that is at least 12,000 square feet in size that is located within the geographic limits of the City, and that  sells primarily

3

household foodstuffs for offsite consumption, including the sale of fresh produce, meats, poultry, fish, deli products, dairy products, canned foods, dry foods, beverages, baked foods, or prepared foods. Other household supplies or other products shall be secondary to the primary purpose of food sales. For the purposeof this Ordinance, "Grocery Store" also means a retail store of any kind located within the geographic limits of the City that devotes 70% or more of its interior space to the sale of household foodstuffs for offsite consumption, including the sale of fresh produce, meats, poultry, fish, deli products, dairy products, canned foods, dry foods, beverages, baked foods, or prepared foods.

K. "Hazard Pay" means an additional $5.00 per hour wage bonus in addition to each Covered Employee's Base Wage or Holiday Premium wage for each hour worked within the City.

L. "Holiday Premium" means the hourly wage paid to Covered Employees for performing work during a holiday or holiday season.

M. "Hours Worked" means the time during which a Covered Employee is subject to the control of a Covered Employer, including all the time the employee is suffered or permitted to work, and on-call.

N. "Person" means any individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust, association, joint venture, agency, instrumentality, or any other legal or commercial entity, whether domestic or foreign.

O. "Retaliatory Action" shall mean the failure to hire, or the discharge, suspension, demotion, penalization, lowering of the Base Wage or Holiday Premium wage, or discrimination or any other adverse action against a Covered Employee with respect to the terms and conditions of the Covered Employee's employment, for opposing any practice proscribed by this Ordinance, for participating in proceedings related to this Ordinance, for seeking to enforce his or her rights under this Ordinance by any lawful means, or for otherwise asserting rights under this Ordinance.

**SECTION 6.  Payment of Hazard Pay to Covered Employees.**

A. Hazard Pay. Covered Employers shall pay Covered Employees a wage of no less than the hourly rate set under the authority of this Ordinance. The Hazard Pay hourly rate for each Covered Employee shall be an additional five dollars ($5.00) per hour for all hours worked at a Grocery Store or, in addition to the Covered Employee's Base Wage or Holiday Premium, whichever applicable at the time of hours worked. The Hazard Pay rate shall not include compensation already owed to Covered Employees, Holiday Premium rates, gratuities, service charge distributions, or other bonuses.

B. Duration of Hazard Pay. Covered Employers shall pay Hazard Pay to all workers for any and all work performed during the effective period of this Ordinance, not to exceed 120-days from the effective date of the Ordinance.

C. Credit for Employer-Initiated Hazard Pay. Credits. Covered Employers providing employer-initiated hazard pay will be credited for doing so in accordance with Section 4. Hazard Pay otherwise required under this Ordinance shall be reduced by the hourly amount of any Employer-Initiated Hazard Pay (e.g. A Covered Employer offering a two

4

dollar ($2.00) per hour Employer-Initiated Hazard Pay pays an additional three dollar ($3.00) per hour in Hazard Pay pursuant to this Ordinance.) Such Covered Employer must demonstrate that, for work performed during the effective period of this Ordinance, all Covered Employees are receiving such Employer-Initiated Hazard Pay. No Covered Employer shall be credited for any past payments of Employer- Initiated Hazard Pay. No Covered Employer shall be credited for any hourly premiums already owed to Covered Employees, such as but not limited to, Holiday Premiums. Nothing herein shall be interpreted to prohibit any Covered Employer from paying more than five dollars ($5.00) per hour in Hazard Pay.

**SECTION 7.  Waiver.**  The provisions of this ordinance may not be waived by agreement between an individual Covered Employee and a Covered Employer. All the provisions of this ordinance, or any part thereof, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in such agreement in clear and unambiguous terms.

**SECTION 8.  Prohibitions.**

   **A.** No Covered Employer or any other Person shall interfere with, restrain, or deny the existence of, or the attempt to exercise, any rights protected under this Ordinance.

   **B.** No Covered Employer or any other Person shall take any Retaliatory Action against any Covered Employee exercising the Covered Employee's rights under this Ordinance. Rights protected under this Ordinance include but are not limited to: the right to file a complaint or inform any Person or government agency about any party's alleged noncompliance with this Ordinance; and the right to inform any Person of the Person's potential rights under this Ordinance and to assist the Person in asserting such rights. Protections of this Ordinance shall apply to any Covered Employee who mistakenly, but in good faith, alleges noncompliance with this Ordinance.

   **C.** Taking adverse action against an employee, including lowering an employee's Base Wage or Holiday Premium Wages or reducing work hours, within 90 days of the employee's exercise of rights protected under this ordinance shall raise a rebuttable presumption of having done so in retaliation for the exercise of such rights.

**SECTION 9.  Notice and Posting.**

   **A.** Hiring entities shall provide covered designated workers with a written notice of rights established by this Ordinance. The notice of rights shall be in a form and manner sufficient to inform designated workers of their rights under this Ordinance. The notice of rights shall provide information on: The right to premium pay guaranteed by this Ordinance.

   **B.** The right to be protected from retaliation for exercising in good faith the rights protected by this Ordinance; and

   **C.** The right to bring a civil action for a violation of the requirements of this Ordinance, including a hiring entity's denial of premium pay as required by this Ordinance and a hiring entity or other person's retaliation against a covered designated worker or other person for asserting the right to premium pay or otherwise engaging in an activity protected by this Ordinance

**SECTION 10.  Enforcement.**

    A. Any person aggrieved by a violation of this Ordinance, on or after the effective date of this Ordinance, may bring a civil action in a court of competent jurisdiction against the Covered Employer or other person violating this Ordinance and, upon prevailing, shall be awarded reasonable attorneys' fees and costs and shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including, without limitation, the payment of any Hazard Premium Pay unlawfully withheld.

    B. The remedies, penalties and procedures provided under this Ordinance are not exhaustive and are not intended to be exclusive of any other available remedies, penalties and procedures.

**SECTION 11.  Prohibitions.**

    A. No Covered Employer or any other Person shall interfere with, restrain, or deny the existence of, or the attempt to exercise, any rights protected under this Ordinance.

    B. No Covered Employer or any other Person shall take any Retaliatory Action against any Covered Employee exercising the Covered Employee's rights under this Ordinance. Rights protected under this Ordinance include but are not limited to: the right to file a complaint or inform any Person or government agency about any party's alleged noncompliance with this Ordinance; and the right to inform any Person of the Person's potential rights under this Ordinance and to assist the Person in asserting such rights. Protections of this Ordinance shall apply to any Covered Employee who mistakenly, but in good faith, alleges noncompliance with this Ordinance.

    C. Taking adverse action against a Covered Employee, including but not limited to lowering a Covered Employee's Base Wage or Holiday Premium Wages or reduction of hours, within ninety (90) days of the Covered Employee's exercise of rights protected under this Ordinance shall raise a rebuttable presumption of having done so in retaliation for the exercise of such rights.

**SECTION 12.  Notice and Posting.**  Every Covered Employer shall post in a conspicuous place at any workplace or job site where any Covered Employee works, a notice informing Covered Employees of their rights under this Ordinance.  Every Covered Employer also shall provide each Covered Employee at the time this Ordinance becomes effective or at the time of hire, whichever is later, the Covered Employer and owner or manager's name; address; telephone number; and whether it is part of a chain, integrated enterprise, or Franchise associated with a franchisor or network of franchises. If the information the Covered Employer provided to the Covered Employee changes, the Covered Employer shall provide the updated information in writing within ten (10) days of the change.

**SECTION 13.  No Mandatory Duty.**  Nothing in this Ordinance is intended to create a mandatory duty on the part of the County, County employees, any Cities or City employees, to protect persons or property from a violation of the provisions of this Ordinance. This Ordinance is not intended to, and does not, create any rights or benefit, substantive or procedural, enforceable at law or equity, against the City.

**SECTION 14.   Effective Date.**   This Urgency Ordinance is hereby declared to be an urgency Ordinance and is adopted under the provisions of the Government Code of the State of California, Section 36937, and shall be effective 10 days after its adoption. This ordinance shall automatically expire and   no longer be of any effect 120 days after its effective date.

**SECTION 15.   Urgency Findings.**   Pursuant to California Government Code Section 36937, this Ordinance is designed to protect the health, safety, and welfare of the citizens of the City of Daly City and shall be effective within 10 days upon adoption of the City Council. The City Council hereby finds that there is an urgent need to adopt these regulations in order to address the current and immediate threats set forth above.

**SECTION 16.   CEQA**. The City Council determines that the adoption of this Urgency Ordinance is exempt from environmental review under the California Environmental Quality Act ("CEQA") pursuant to the following provisions of the CEQA Guidelines, 14 California Code of Regulations, Chapter 3: this Urgency Ordinance is exempt under CEQA Guidelines Section 15378(b)(5) in that it is not a "project" under CEQA, and will not result in direct or indirect physical changes in the environment.

**SECTION 17.   Severability**.   If any section or provision of this Urgency Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, or contravened by reason of any preemptive legislation, the remaining sections and/or provisions of this Urgency Ordinance shall remain valid. The City Council hereby declares that it would have adopted this Urgency Ordinance, and each section or provision thereof, regardless of the fact that any one or more section(s) or provision(s) may be declared invalid or unconstitutional or contravened via legislation.

**SECTION 18.   Publication.**   The Mayor shall sign this ordinance and the City Clerk shall attest and certify to the passage and adoption of it, and within fifteen (15) days, publish once in a newspaper of general circulation circulated within the City of Daly City. The City Clerk shall post at City Hall a copy of the full text of this Ordinance in accordance with Government Code Section 65858 and 75090 and posted on the City's website

The foregoing urgency ordinance was introduced and duly adopted by a four-fifths vote of the City Council of the City of Daly City at a special meeting of the City Council, held on the _____day of _____, 2021, by the following vote:

AYES, Councilmembers:_____

_____

NOES, Councilmembers:_____

Absent, Councilmembers:_____

_____
CITY CLERK OF THE CITY OF DALY CITY

7

APPROVED:

_____
MAYOR OF THE CITY OF DALY CITY